RENDERED:  OCTOBER 24, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1393-MR

CPV STONECROP SOLAR, LLC                          APPELLANT

|  | APPEAL FROM HARDIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE LARRY ASHLOCK, JUDGE |
|  | ACTION NO. 24-CI-00286 |

HARDIN COUNTY PLANNING AND
DEVELOPMENT COMMISSION AND
ADAM KING, IN HIS OFFICIAL
CAPACITY AS DIRECTOR AND
BUILDING OFFICIAL OF THE
HARDIN COUNTY PLANNING AND
DEVELOPMENT COMMISSION                    APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  COMBS, L. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  CPV Stonecrop Solar, LLC (Stonecrop) brings this appeal from an October 25, 2024, Order of the Hardin Circuit Court denying Stonecrop's petition for declaration of rights.  We vacate and remand.

This controversy surrounds Stonecrop obtaining "option" agreements to lease real property from several property owners in Hardin County for the purpose of developing an agrivoltaics operation thereupon.[1]  Under these option agreements, Stonecrop could exercise the option to lease some 640 acres of real property and build an 82-megawatt agrivoltaics operation on the leased property. According to Stonecrop, agrivoltaics is the combined use of real property for solar electric generation and for agricultural activities, such as in this case, sheep grazing, crop cultivation, pollinator habitat, and apiaries.  The 640 acres of real property was zoned for agricultural and rural residential.

On January 11, 2024, Stonecrop sent a letter to Adam King, Director and Building Official of the Hardin County Planning and Development Commission (Commission).  Therein, Stonecrop sought a determination from King that its proposed agrivoltaics operation was exempt from the zoning ordinances of Hardin County because such operation constituted an agricultural use of property. As an agricultural use was involved, Stonecrop concluded that the agricultural supremacy act and the Right to Farm Act were applicable; thus, the Commission had no jurisdiction.  By letter dated January 30, 2024, counsel for the Commission responded that the agrivoltaics operation was not an agricultural use of real

---

[1] The use of farmland for this type of operation is commonly referred to as a "Solar Farm."

property and was not exempt from the Hardin County planning and zoning ordinances.

On February 26, 2024, Stonecrop filed a Petition for Declaratory Judgment in the Hardin Circuit Court against the Commission and King. In the petition, Stonecrop alleged that it obtained the option to lease some 640 acres of real property in Hardin County. Stonecrop asserted that it planned to establish a solar energy facility intertwined with agricultural operations (agrivoltaics operation) on the 640 acres of real property. As the property would be used for agricultural purposes, Stonecrop claimed that the property was exempt from the Commission's jurisdiction under the agricultural supremacy clause and the Right to Farm Act. Stonecrop pointed out that by letter dated January 30, 2024, the Commission informed Stonecrop that the agrivoltaics operation was not exempt as it did not qualify as an agricultural use. Stonecrop sought a judgment declaring that the planned agrivoltaics operation on the 640 acres of real property would be exempt as an agricultural use.

By Order entered October 25, 2024, the circuit court held that it lacked subject matter jurisdiction to consider the petition. The court concluded that the January 30, 2024, letter from the Commission to Stonecrop did not operate as a final decision or action by the Commission in its administrative review process as set out in Kentucky Revised Statutes (KRS) 100.347. Specifically, the court

pointed out that it only had jurisdiction to review a final action or order of the Commission per KRS 100.347, and in this case, there was no final action or order of the Commission. Additionally, the court maintained that Stonecrop failed to exhaust its administrative remedies before filing the declaratory judgment action in circuit court. This appeal follows.

Stonecrop contends that the circuit court erroneously denied its petition for declaratory rights. Initially, Stonecrop asserts that the circuit court improperly concluded that it lacked jurisdiction. Citing to *Nash v. Campbell County Fiscal Court*, 345 S.W.3d 811 (Ky. 2011), Stonecrop maintains that "there is no requirement to seek any relief from the planning commission before obtaining a judicial declaration that a property is exempt" under the agricultural supremacy clause and the Right to Farm Act. Stonecrop's Brief at 13. Stonecrop points out that agricultural uses of real property are expressly excluded from planning and zoning jurisdiction of the Commission. In particular, Stonecrop alleges:

> Stonecrop's suit does not seek any zoning map amendment or other order within the Commission's jurisdiction; it seeks a declaration that the Commission has no zoning jurisdiction over the Property at all. There is no statutory procedure or authority for Stonecrop to seek a final ruling or judgment from the Planning Commission that it *lacks* regulatory jurisdiction under the Agricultural Supremacy Clause or the Right to Farm Act, so this suit cannot fairly be characterized as an appeal from any final action of the Commission.

Stonecrop's Brief at 16. Therefore, Stonecrop asserts that the circuit court possesses jurisdiction to adjudicate the petition for declaration of rights.

In Kentucky, the General Assembly has enacted several statutory provisions limiting the authority of a city or county to regulate real property used for agricultural purposes. Under KRS Chapter 100 (Planning and Zoning), KRS 100.203(4) prohibits a city or county from enacting zoning or planning regulations concerning property used for "agricultural purposes." And, KRS 100.111(22) exempts from the definition of subdivision, "a division of land for agricultural use and not involving a new street." KRS 100.111(2)(a) particularly defines "agricultural use," in relevant part, as:

> A tract of at least five (5) contiguous acres for the production of agricultural or horticultural crops, including but not limited to livestock, livestock products, poultry, poultry products, grain, hay, pastures, soybeans, tobacco, timber, orchard fruits, vegetables, flowers, or ornamental plants, including provision for dwellings for persons and their families who are engaged in the agricultural use on the tract, but not including residential building development for sale or lease to the public. For purposes of this subsection, "livestock" means cattle, sheep, swine, goats, horses, alpacas, llamas, buffaloes, and any other animals of the bovine, ovine, porcine, caprine, equine, or camelid species[.]

These statutes (KRS 100.203, KRS 100.111(2)(a), and KRS 100.111(22)) are commonly referred to as the "agricultural supremacy clause":

-5-

The "agricultural supremacy clause" is not a specific clause in the text of Chapter 100 of the Kentucky Revised Statutes, but a doctrine or thread that is woven throughout the Chapter. When the Chapter authorizes zoning regulations, KRS 100.203(4) exempts land used for agricultural purposes (whether or not in an agricultural zone) from most regulations on the *use* of land. When the Chapter authorizes subdivisions of land, KRS 100.111(22) exempts land used for agricultural purposes not involving a new street from regulations on *divisions* of land. KRS 100.111(2) defines "agricultural use" which, in most cases, requires at least five contiguous acres to be considered an agricultural use. Together, these statutes create the "agricultural supremacy clause" or an agricultural exemption doctrine which takes agricultural *uses* outside the jurisdiction of zoning ordinances and agricultural *divisions* outside the jurisdiction of subdivision regulations, although not outside of planning or the master or comprehensive plan.

*Nash*, 345 S.W.3d at 817 (footnote omitted).

A further expression of the agricultural supremacy clause is found in KRS 413.072, which is generally referred to as the Right to Farm Act. *Id.* In pertinent part, KRS 413.072 provides:

> (2) No agricultural or silvicultural operation or any of its appurtenances shall be or become a nuisance or trespass, private or public, or be in violation of any zoning ordinance, or be subject to any ordinance that would restrict the right of the operator of the agricultural or silvicultural operation to utilize normal and accepted practices, by any changed conditions in or about the locality thereof after the same has been in operation for more than one (1) year, when the operation was not a nuisance at the time the operation began. The provisions of this subsection shall not apply whenever a nuisance, trespass, or zoning

violation results from the negligent operation of an agricultural or silvicultural operation or its appurtenances.

(3)(a) For the purposes of this section, "agricultural operation" includes, but is not limited to, any facility for the production of crops, livestock, equine, poultry, livestock products, poultry products, horticultural products, and any generally accepted, reasonable, and prudent method for the operation of a farm to obtain a monetary profit that complies with applicable laws and administrative regulations, and is performed in a reasonable and prudent manner customary among farm operators. Agricultural practices protected by this section shall include, but not be limited to, fertilizer application, the application of pesticides or herbicides that have been approved by public authority, planting, cultivating, mowing, harvesting, land clearing, and constructing farm buildings, roads, lakes, and ponds associated with a farming operation.

(b) 1. An agricultural operation may include the practice of sustainable agriculture.

2. For purposes of this section, "sustainable agriculture" includes science-based practices that:

a. Are supported by research and the use of technology;

b. Are demonstrated to lead to broad outcomes-based performance improvements that meet the needs of the present; and

c. Improve the ability of future generations to meet their needs while advancing progress toward environmental, social, and economic goals and the well-being of agricultural producers and rural communities.

3. Sustainable agriculture may use continuous improvement principles, with goals that include:

    a. Increasing agricultural productivity;

    b. Improving human health through access to safe, nutritious, and affordable food; and

    c. Enhancing agricultural and surrounding environments, including water, soil, and air quality, biodiversity, and habitat preservation.

The Kentucky Supreme Court interpreted the above statutes in *Nash*, 345 S.W.3d 811. Therein, property owners sought to subdivide their real property into tracts containing five or more acres, which would continue to be used for agricultural purposes after the division. The relevant county ordinance required the property owner to file an application with the commission that evidenced the property would be limited to agricultural uses. The Kentucky Supreme Court held that the ordinance was void as violative of KRS 100.111(22), KRS 100.111(2), KRS 100.203(4), and KRS 413.072. In particular, the Court reasoned:

> Subdivision plats are approved by the planning commission as a ministerial function to insure compliance with the subdivision regulations. KRS 100.111(22) exempts, from the definition of "subdivision", divisions of land which are restricted to agricultural uses and not involving a new street. Agricultural uses in both the zoning ordinances and in subdivision regulations are defined in KRS 100.111(2), and for purposes herein, usually require a parcel of at least five contiguous acres. Under the Campbell County Ordinances in question, a landowner [sic] desiring to divide and convey parcels for agricultural purposes must

-8-

make an application to the "Campbell County Planning and Zoning Commission [a]nd/[o]r Review Board", with evidence that the proposed conveyance is restricted to agricultural uses and that the land will not be used for residential building uses, to prove entitlement to the agricultural exemption from the subdivision regulations. We believe this approach is the reverse of the statutory scheme—which requires subdivision approval by a planning commission, but does *not* require planning commission approval of conveyances which do not involve subdividing. The ordinances in question require the property owners prove a negative to the planning commission before property can be divided or conveyed for agricultural uses. To the extent the ordinances in question require *planning commission approval* before property can be divided into agricultural parcels, we agree with the circuit court that said ordinances are void, although not because they violate the Constitution, but because they conflict with the statutory wording and scheme of KRS 100.111(22), KRS 100.111(2), KRS 100.203(4), and KRS 100.273 *et seq.*, as well as KRS 413.072, which prohibits local regulations on agricultural uses. . . .

*Nash*, 345 S.W.3d at 815 (footnotes omitted). The Court concluded that property owners need not seek commission approval for divisions of property used for agricultural purposes. Rather, if the commission believed that the division of property was not exempt from its review as an agricultural use, the Court explained that the planning commission could file an action to challenge same:

The fact that a property owner does not need planning commission approval of *divisions* of land under the agricultural exemption of KRS 100.111(22), KRS 100.111(2), and KRS 100.203(4), does not mean that any deed (of a proposed agricultural division of land) that recites that it is exempt from planning commission

approval under said statute(s) is automatically entitled to be recorded. There is no presumption under the statutes that tracts of five or more acres are for agricultural use. A planning commission that believes a division of land is not exempt from its review and approval (under KRS 100.111(22) and KRS 100.111(2)) can seek injunctive relief or otherwise litigate. In the event land is sold in violation of the subdivision regulations, the attempted conveyances are void.

*Id.* at 815 (footnotes omitted). Additionally, the Court recognized that a property owner may file a petition for declaration of rights:

[W]ithout a review by the planning commission, how is a clerk to know whether a proposed division is a subdivision needing planning commission approval, or an agricultural division which is exempt from planning commission approval? That is the clerk's call, and if the clerk has a question about the validity or recordability of a deed, he/she can always request a review of the tendered documents by private counsel, the county attorney, or even the planning commission. An owner whose tendered divisions is refused recording by a county clerk may bring a declaration of rights action under KRS 418.040, which was done in this case.

*Id.* at 816.

Considering the dictates of *Nash*, 345 S.W.3d at 815, we conclude that the circuit court erred by concluding that it lacked subject matter jurisdiction to adjudicate Stonecrop's petition for declaration of rights because there was no final order of the Commission. As set forth in *Nash*, KRS 100.111(22), KRS 100.111(2), KRS 100.203(4), and KRS 413.072 exempt real property used for agricultural purposes from the authority or regulation of city or county zoning and

-10-

planning, with few exceptions. 345 S.W.3d at 815. *Nash* particularly instructed that the appropriate avenue to determine if property is used for an agricultural purpose is to file an action in the circuit court. *Id*. at 815-16. Thus, Stonecrop had no obligation to obtain a final order from the Commission as to whether the agrivoltaics operation constituted an agricultural use. And, the circuit court committed reversible error by concluding otherwise.

As the circuit court dismissed this case due to lack of subject matter jurisdiction, the circuit court did not reach the issue of whether Stonecrop's agrivoltaics operation constituted an agricultural use. Therefore, the circuit court has not considered the facts or held an evidentiary hearing to develop the facts. Moreover, the determination of whether the agrivoltaics operation constitutes an agricultural use may be fact intensive.

Accordingly, we vacate the circuit court's order and remand for the circuit court to determine whether Stonecrop's agrivoltaics operation constitutes an agricultural use or purpose for the property per KRS Chapter 100. In so doing, the court may hold an evidentiary hearing to discern the relevant facts, and the parties may call witnesses and submit evidence. Of course, if presented with a motion for summary judgment, the circuit court may alternatively determine that the facts are uncontroverted and render summary judgment. However, in this Opinion, we do not reach the merits of the issue of whether the agrivoltaics operation constitutes an

-11-

agricultural purpose or use of real property.  We merely conclude that the circuit court erred by dismissing the petition for lack of subject matter jurisdiction.

For the foregoing reasons, the Order of the Hardin Circuit Court is vacated and remanded for proceedings consistent with this Opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Gregory T. Dutton
Jason P. Renzelmann
Kathryn A. Eckert
Louisville, Kentucky


ORAL ARGUMENT
FOR APPELLANT:

Gregory T. Dutton
Louisville, Kentucky

BRIEF FOR APPELLEES:

R. Keith Bond
Elizabethtown, Kentucky

Joshua M.P. Cooper
Elizabethtown, Kentucky


ORAL ARGUMENT FOR
APPELLEES:

Joshua M.P. Cooper
Elizabethtown, Kentucky